1
2
3
4
5

**MORGAN, LEWIS & BOCKIUS LLP**
Joseph Duffy, Bar No. 241854
joseph.duffy@morganlewis.com
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Tel:   +1.213.612.7378
Fax:   +1.213.612.2501

6
7
8
9
10
11
12
13

Eric W. Sitarchuk, PA Bar No. 39082 (*pro hac vice*)
eric.sitarchuk@morganlewis.com
Ryan P. McCarthy, PA Bar No. 206961 (*pro hac vice*)
ryan.mccarthy@morganlewis.com
Jaclyn U. Whittaker, PA Bar No. 316282 (*pro hac vice*)
jaclyn.whittaker@morganlewis.com
1701 Market St.
Philadelphia, PA 19103-2921
Tel:   +1.215.963.5000
Fax:   +1.215.963.5001

14
15
16

Attorneys for Defendants
Express Scripts Holding Co. and
Express Scripts, Inc.

17
18

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

19
20
21
22
23
24
25
26
27
28

UNITED STATES OF AMERICA *ex rel.* 3729 LLC,
                         Plaintiffs,

            vs.

EXPRESS SCRIPTS HOLDING CO. and EXPRESS SCRIPTS, INC.
            Defendants.

Case No. 3:19-cv-01199-TWR-WVG

**DEFENDANTS EXPRESS SCRIPTS HOLDING CO. AND EXPRESS SCRIPTS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS**

*Filed concurrently with Defendants' Motion to File Document Under Seal and Defendants' Request for Judicial Notice and Incorporation by Reference*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jury Trial Demanded

Hon. Todd W. Robinson
Courtroom 3A
Hearing Date: Mar. 2, 2023, 1:30 PM

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.    The FCA's Public Disclosure Bar Forecloses 3729 LLC's Complaint ................... 3

    A.    Substantially the Same Allegations in 3729 LLC's Complaint Were Publicly Disclosed by the News Media in a Mirror-Image *Army Times* Article ................................................................................................... 5

    B.    DoD Publicly Disclosed in the Federal Register Substantially the Same Allegations That Are in 3729 LLC's Complaint .................................. 8

    C.    3729 LLC Does Not Qualify as an Original Source ................................... 10

        1.    3729 LLC is Not an Original Source ................................................ 10

        2.    3729 LLC's Allegations Do Not Materially Add to the Public Disclosure ........................................................................................ 12

        3.    3729 LLC Fails to Allege it Made the Statutorily Mandated Voluntary Disclosure to the Government ........................................... 14

II.    The Complaint Fails to State a Claim ..................................................................... 15

    A.    Failure to Allege Fraud or Falsity ............................................................. 15

    B.    Failure to Allege Materiality ...................................................................... 19

    C.    Failure to Allege Scienter .......................................................................... 21

        1.    ESI Reasonably Interpreted Applicable Requirements ..................... 22

        2.    DHA Was Aware of ESI's Actions, Negating Scienter ..................... 23

III.    The Holding Company Should Be Dismissed ......................................................... 23

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-1 Ambulance Serv., Inc. v. California,*
202 F.3d 1238 (9th Cir. 2000) ................................................................15

*Abrahim & Sons Enters. v. Equilon Enters., LLC,*
292 F.3d 958 (9th Cir. 2002) .................................................................11

*Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.,*
816 F. App'x 64 (9th Cir. 2020) ........................................................15, 19

*Amphastar Pharms. Inc. v. Aventis Pharma SA,*
856 F.3d 696 (9th Cir. 2017) ..............................................................5, 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................15

*Bell Atl. Corp v. Twombly,*
550 U.S. 544 (2007) ............................................................................15

*Coto Settlement v. Eisenberg,*
593 F.3d 1031 (9th Cir. 2010) ................................................................2

*Fed. Recovery Servs., Inc. v. United States,*
72 F.3d 447 (5th Cir. 1995) .................................................................12

*Gonzalez v. Planned Parenthood of L.A.,*
759 F.3d 1112 (9th Cir. 2014) .........................................................21, 23

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,*
559 U.S. 280 (2010) ..........................................................................4, 5

*Jordan v. Bank of Am., N.A.,*
396 F. Supp. 3d 922 (E.D. Cal. 2019) .....................................................18

*Parker v. Sea-Mar Cmnty. Health Ctr.,*
853 F. App'x 197 (9th Cir. 2021) ...........................................................18

ii

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)...........................................................................................22

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
    445 F. Supp. 3d 393 (N.D. Cal. 2020)...........................................................4, 15

*United States v. Bollinger Shipyards, Inc.*,
    No. 12-920, 2013 WL 393037 (E.D. La. Jan. 30, 2013) ...................................23

*United States v. McKesson Corp.*,
    2020 WL 4805034 (N.D. Cal. Aug. 18, 2020) ...........................................17, 18

*United States v. N. Am. Health Care, Inc.*,
    173 F. Supp. 3d 943 (N.D. Cal. 2016)..............................................7, 10, 13, 14

*United States v. Safran Grp.*,
    No. 15-CV-00746-LHK, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017)....4, 15, 23

*United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
    No. EDCV 17-00002 JGB (KKx), 2018 WL 5266867 (C.D. Cal. Sept.
    27, 2018), *aff'd*, 816 F. App'x 64 (9th Cir. 2020) ............................................19

*United States v. Shasta Servs., Inc.*,
    440 F. Supp. 2d 1108 (E.D. Cal. 2006) ...........................................................19

*United States v. TruConnect*,
    No. CV 16-3767 PSG, 2020 WL 13534177 (C.D. Cal. Nov. 23, 2020)............20

*United States v. United Parcel Serv., Inc.*,
    No. CV 08-7284-GW-GW(CTx), 2015 WL 13648581 (C.D. Cal. July 2,
    2015) ................................................................................................................21

*United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharm. N.V.*,
    945 F.3d 1237 (9th Cir. 2020) ..................................................................11, 12

*United States ex rel. Bly-Magee v. Premo*,
    333 F. App'x 169 (9th Cir. 2009) .....................................................................16

*United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings,
Inc.*,
    551 F. Supp. 3d 27 (E.D.N.Y. 2021) .........................................................11, 12, 14

*United States ex rel. Costner v. United States*,
    317 F.3d 883 (8th Cir. 2003) ...........................................................................23

*United States ex rel. DeFatta v. United Parcel Serv., Inc.*,
  771 F. App'x 735 (9th Cir. 2019) ................................................................16, 21

*United States ex rel. Doe v. Janssen Pharm. N.V.*,
  No. CV 16-06997-RGK-RAO, 2018 WL 5276291 (C.D. Cal. Apr. 19,
  2018) ....................................................................................................................11

*United States ex rel. Fed. Recovery Servs., Inc. v. Crescent City E.M.S., Inc.*,
  No. 91-4150, 1993 WL 345655 (E.D. La. Aug. 30, 1993), *aff'd*, 72 F.3d
  447........................................................................................................................12

*United States ex rel. Guzman v. Insys Therapeutic, Inc.*,
  No. 2:13-cv-05861-JLS-AJW, 2021 WL 4306020 (C.D. Cal. May 19,
  2021) ......................................................................................................................4

*United States ex rel. Hansen v. Cargill, Inc.*,
  107 F. Supp. 2d 1172 (N.D. Cal. 2000) ................................................................5

*United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*,
  656 F. App'x 328 (9th Cir. 2016) ......................................................12, 13, 14

*United States ex rel. Hong v. Newport Sensors, Inc.*,
  No. SACV 13-1164-JLS, 2016 WL 8929246 (C.D. Cal. May 19, 2016),
  *aff'd*, 728 F. App'x 660 (9th Cir. 2018) ............................................................24

*United States ex rel. Jahr v. Tetra Tech EC, Inc.*,
  No. 13-cv-03835-JD, 2022 WL 2317268 (N.D. Cal. June 28, 2022) .................7

*United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*,
  372 F. Supp. 3d 1078 (N.D. Cal. 2019) ............................................................22

*United States ex rel. Lee v. Corinthian Colls.*,
  No. CV 07-1984 PSG (MANx), 2013 WL 12114015 (C.D. Cal. Mar. 15,
  2013) ......................................................................................................................9

*United States ex rel. McGrath v. Microsemi Corp.*,
  690 F. App'x 551 (9th Cir. 2017) ......................................................................22

*United States ex rel. O'Neill v. Somnia, Inc.*,
  339 F. Supp. 3d 947 (E.D. Cal. 2018) ......................................................16, 17

*United States ex rel. Perry v. Pac. Maritime Indus. Corp.*,
  No. 13cv2599-LAB (JMA), 2015 WL 4401748 (S.D. Cal. July 17, 2015) .........2

iv

*United States ex rel. Petratos v. Genentech,*
   855 F.3d 481 (3d Cir. 2017) ...................................................................21

*United States ex rel. Precision Co. v. Koch Indus., Inc.,*
   971 F.2d 548 (10th Cir. 1992) .........................................................11, 12

*United States ex rel. Sanches v. City of Crescent City,*
   No. C 08-05663 MEJ, 2010 WL 4696835 (N.D. Cal. Nov. 10, 2010) ..............14

*United States ex rel. Silbersher v. Allergan, Inc.,*
   46 F.4th 991 (9th Cir. 2022) .............................................................4, 9

*United States ex rel. Solis v. Millennium Pharms., Inc.,*
   885 F.3d 623 (9th Cir. 2018) ...........................................5, 7, 10, 19

*United States ex rel. Whatley v. Eastwick Coll.,*
   657 F. App'x 89 (3d Cir. 2016) .....................................................17, 18

*United States ex rel. Winkelman v. CVS Caremark Corp.,*
   827 F.3d 201 (1st Cir. 2016).........................................................12, 13

*United States ex rel. Zissa v. Santa Barbara Cnty. Alcohol, Drug & Mental Health Servs.,*
   2019 WL 3291579 (C.D. Cal. Mar. 12, 2019)....................................21

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
   579 U.S. 176 (2016).......................................................17, 19, 20, 21

**Statutes**

31 U.S.C. § 3729(a)(1)(A) .............................................................................21

31 U.S.C. § 3730(e)(4)(A) .........................................................................5, 10

31 U.S.C. § 3730(e)(4)(A)(ii) ...........................................................................4

31 U.S.C. § 3730(e)(4)(A)(iii) .....................................................................4, 5

31 U.S.C. § 3730(e)(4)(B) .......................................................................11, 14

**Other Authorities**

32 C.F.R. § 199.9(c).......................................................................................16

32 C.F.R. § 199.9(c)(5)..................................................................................16

v

32 C.F.R. § 199.21 ......................................................................................16

National Community Pharmacists Association, https://ncpa.org/ (last visited
    Dec. 15, 2022)........................................................................................6

Civilian Health & Medical Program of the Uniformed Services
    (CHAMPUS)/TRICARE: Refills of Maintenance Medications Through
    Military Treatment Facility Pharmacies or National Mail Order Pharmacy
    Program, 80 Fed. Reg. 46,796 (Aug. 6, 2015) ......................................8

Civilian Health & Medical Program of the Uniformed Services
    (CHAMPUS)/TRICARE: Refills of Maintenance Medications Through
    Military Treatment Facility Pharmacies or National Mail Order Pharmacy
    Program, 81 Fed. Reg. 76,307 (Nov. 2, 2016) ...........................8, 9, 10

**INTRODUCTION**

In 2013, the *Army Times* published an article claiming that Express Scripts, Inc. ("ESI") and Express Scripts Holding Company ("ESHC," and together, "Defendants") over-dispensed prescription medication to TRICARE prescription program enrollees by shipping 90-day supplies of medications to TRICARE beneficiaries every 60 days. Similar allegations were publicly disclosed in the Federal Register through a Department of Defense ("DoD") notice-and-comment rulemaking spanning 2015 to 2016. Years later, Relator filed this qui tam lawsuit, premised on the very same claim previously disclosed publicly in the *Army Times* article and through the DoD's rulemaking. Because Relator, a shell company named after the False Claims Act ("3729 LLC") and formed to bring this suit, is not an original source, the lawsuit should be dismissed under the public disclosure bar of the False Claims Act ("FCA").

Additionally, the Complaint fails to state a claim for an FCA violation. First, it fails to allege falsity because it alleges no contractual or regulatory requirement that ESI's purported dispensing practices violated. Second, it fails to allege materiality because it alleges no misrepresentation that would have impacted the government's payment decisions, especially given the government's continued payment of claims after learning of ESI's alleged conduct. Finally, the Complaint fails to allege that ESI possessed the requisite FCA scienter because it alleges no unreasonable interpretation of ESI's legal or contractual obligations.

For each of these reasons, the Court should dismiss the Complaint with prejudice.

**BACKGROUND**

TRICARE is the health insurance program for active duty and retired United States military service members, managed by the Defense Health Agency ("DHA"). ESI's mail order pharmacy was first awarded the TRICARE Pharmacy Program Services Contract (known as "TPharm2") in June 2008 to provide patients home delivery of prescription

1

medications through the TRICARE Mail Order Pharmacy ("TMOP") program.  Ex. A.[1] The contract did not dictate the quantity or frequency for dispensing mail order medication. *Id*.  It also was silent as to the maximum days' supply of medication that could be dispensed within a 365-day period or the appropriate refill cadence for any automatic refill program. *Id*.  TPharm2 thus left ESI free to "[p]romote patient safety through the utilization of best commercial practice."  *Id*. at 2, § C.2.3.[2]

TPharm2 requires ESI to provide DHA with access to claims data and to utilize Drug Utilization Review rules (which DHA had to review and approve) to control for over-supply.  *Id*. at 4-5, §§ C.5.10.1; C.5.14.2.  The contract provided DHA with full access to all claims and refill data.  However, there is no allegation that DHA ever objected to the timing of automatic refills during TPharm2, or denied payment based on purported over-dispensing.

---

[1] Pursuant to Section III.A.3 of the Court's Standing Order for Civil Cases, Defendants include only excerpts of this and the other contracts (which are collectively over 1,100 pages) cited herein, specifically excerpting only the pages Defendants have cited. Defendants will provide non-excerpted copies should this Court request that they do so.

[2] Where a plaintiff alleges the contents of a contract or a contract forms the basis of a complaint, a court may consider the contract in deciding a motion to dismiss under the incorporation by reference doctrine.  *See United States ex rel. Perry v. Pac. Maritime Indus. Corp.*, No. 13cv2599-LAB (JMA), 2015 WL 4401748, at *3 (S.D. Cal. July 17, 2015) (reviewing contracts referred to in complaint pursuant to a motion to dismiss FCA action premised on "alleged failure to adhere to the requirements" of the contracts under incorporation by reference); *accord Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Here, 3729 LLC alleges the contents of the TMOP contracts throughout. *E.g.*, Compl. ¶¶ 1, 24, 34-35, 45, 76, 127.

2

In 2014, DHA renewed its contract with ESI (known as "TPharm4"). Ex. B.  As with TPharm2, TPharm4 did not specify the quantity or frequency for dispensing mail order medication nor the maximum days' supply of medication.  Ex. B.  TPharm4 thus again gave ESI latitude to implement the automatic refill program according to its best commercial practice.  Ex. B at 9, § C.7.1.10.

Following 3729 LLC's filing of the Complaint under seal in 2019, the U.S. Department of Justice ("DOJ") conducted a multi-year investigation of the allegations in the Complaint.  After that investigation, on June 16, 2022, the DOJ declined to intervene in this matter.

In 2021, two years after this action was filed, with full knowledge of 3729 LLC's allegations, DHA again chose to renew the contract with ESI.  This contract, known as TPharm5, for the first time included provisions on dispensing frequency and quantity.  Ex. C.  In so doing, it expressly permitted ESI to dispense up to 450 days' supply of medication over a 365-day period.  It also allowed for even greater supply in some circumstances.  Ex. C at 20, § C.6.1.23.4.  Thus, when, for the first time, DHA set forth specific requirements, it expressly permitted dispensing frequencies and quantities consistent with ESI's preexisting practices.

## **ARGUMENT**

### I.  **The FCA's Public Disclosure Bar Forecloses 3729 LLC's Complaint**

A complaint must be dismissed under the public disclosure bar if "substantially the same allegations or transactions as alleged in the action" were publicly disclosed "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation" or "from the news media," unless the relator is an "original source of the

information." 31 U.S.C. § 3730(e)(4)(A)(ii)-(iii).[3]  The public disclosure bar "strike[s] a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294-95 (2010); *Silbersher v. Valeant Pharms. Int'l, Inc.*, 445 F. Supp. 3d 393, 401 (N.D. Cal. 2020).   As the Ninth Circuit noted, the Supreme Court has "commended" the public disclosure bar's "broad scope." *United States ex rel. Silbersher v. Allergan, Inc.*, 46 F.4th 991, 997 (9th Cir. 2022).[4]

The essential allegations on which 3729 LLC's Complaint is premised are identical to those publicly disclosed in an *Army Times* article published well before the Complaint was filed.  The allegations were also disclosed publicly during DoD's 2015-2016 notice-and-comment rulemaking regarding the TMOP program.  This lawsuit is precisely the kind of "parasitic lawsuit" the public disclosure bar is intended to prevent, and the Court should dismiss it.

---

[3] In deciding the applicability of the public disclosure bar, courts may take judicial notice of certain sources outside of the complaint.  *United States v. Safran Grp.*, No. 15-CV-00746-LHK, 2017 WL 235197, at *1 n.1 (N.D. Cal. Jan. 19, 2017) (taking judicial notice of matters of public record and dismissing complaint under public disclosure bar).  ESI asks the Court to take judicial notice of the *Army Times* article.  *See United States ex rel. Guzman v. Insys Therapeutic, Inc.*, No. 2:13-cv-05861-JLS-AJW, 2021 WL 4306020, at *3 (C.D. Cal. May 19, 2021) (taking judicial notice of news articles and dismissing complaint under public disclosure bar).

[4] All citations and internal quotation marks are omitted unless otherwise indicated.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.      Substantially the Same Allegations in 3729 LLC's Complaint Were Publicly Disclosed by the News Media in a Mirror-Image *Army Times* Article**

In December 2013, the *Army Times* published an article titled "DoD: Mail-order meds program may waste money."  Ex. D.  The *Army Times* is a publication for the U.S. military and agencies such as DoD and DHA, and is "news media" that triggers the bar. 31 U.S.C. § 3730(e)(4)(A)(iii).[5]  The fact that this is a publication of a DoD component, and thus identifies the very matter at issue for the customer supposedly wronged here, makes this about as targeted a public disclosure as one could expect to find.

To trigger the bar, the publicly disclosed facts need only be ***substantially*** the same, not identical, to a relator's allegations, and the disclosure need not cover every detail. *United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 626 (9th Cir. 2018). Rather, when a "critical mass" of the underlying facts or allegations have been publicly disclosed, the bar applies.  *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 703 (9th Cir. 2017).

The disclosures in the article are "substantially the same allegations or transactions as alleged" in the Complaint.  *See* 31 U.S.C. § 3730(e)(4)(A).  The article specifically alleges that ESI dispensed "90-day, instead of 30-day, prescriptions," after only "60 days." Ex. D.  It went on to claim that TMOP participants had "up to a year's worth of drugs piled in medicine cabinets and linen closets."  *Id.*  As a result, according to the article, "12 months

---

[5] That category includes "a large number of local newspapers and radio stations," among a "multitude of sources that would seldom come to the attention of the Attorney General." *Graham Cnty.*, 559 U.S. at 300.  Specialized periodicals like the *Army Times*, which appeal to specific industries and audiences are "news media."  *See, e.g.*, *United States ex rel. Hansen v. Cargill, Inc.*, 107 F. Supp. 2d 1172, 1179 (N.D. Cal. 2000) (news media includes *The Bay Institute of San Francisco* and *Vallejo Times Herald*).

into" their prescriptions, participants had an extra "nine-month supply of drugs." *Id.*  As the article explained, these claims were promoted by the National Community Pharmacists Association ("NCPA"), which is a lobbying group for retail pharmacies that competed directly with TMOP for service member customers.[6]  *Id.*  The article concluded that ESI was "making a fortune off the government" through this purported scheme.  *Id.*

These allegations in the *Army Times* article are virtually identical to those at the heart of 3729 LLC's Complaint.  The Complaint makes precisely the same claim as the *Army Times* article:  that ESI regularly sent 90-day refills of medication after 60 days.  *See* Compl. ¶¶ 37-40.  3729 LLC alleges that, as a result, "[a]fter one year, a beneficiary had received and still had on-hand, including the first fill, 265 pills, *i.e.*, almost nine months of extra medication" that they were "storing in [their] medicine cabinet," again in words nearly identical to the article.  *Id.* ¶ 44; *see also id.* ¶ 3 ("[T]his auto-refill pattern caused an excess of 265 pills—an extra nine-month supply—to be dispensed for each prescription over the course of a year.").

A side-by-side comparison further reveals the similarities between the allegations in the article and those in the Complaint:

| *Army Times* Article (2013) | 3729 LLC's Complaint (2019) |
| --- | --- |
| Beneficiaries have "up to a year's worth of drugs **piled in medicine cabinets** and linen closets." | "In two years, the beneficiary had received and presumably was **storing in his or her medicine cabinet**, or had discarded or given away, an extra year-and-a-half of medication."  ¶ 44. |
| "[ESI] ship[s] **90-day supplies after 60 days**. By the time I get **12 months** into this, I have a **nine-month supply of drugs.**" | "[F]or a 90-day supply prescription on auto-refill, a full **90-day supply of pills was dispensed on day 60** . . . . [T]his auto-refill pattern caused an excess of 265 pills—**an extra nine-month supply**—to be dispensed for each prescription **over the course of a year.**"  ¶ 3. |

---

[6] National Community Pharmacists Association, https://ncpa.org/ (last visited Dec. 15, 2022).

| ***Army Times* Article (2013)** | **3729 LLC's Complaint (2019)** |
|---|---|
| | "Express Scripts would send the refill on the **60th day following the prior fill, for another 90-day supply**." ¶ 38. |
| | "[E]ach time a prescription for a maintenance drug was refilled – always on the **60th day** – Express Scripts sent not a 60-day but a **full 90-day supply**.  ¶ 39 (emphasis omitted). |
| | "Express Scripts sent **90 pills every 60 days**. . . . **After one year**, a beneficiary had received and still had on-hand, including the first fill, 265 pills, *i.e.*, almost **nine months of extra medication**." ¶ 44. |

Thus, both the *Army Times* article and 3729 LLC's Complaint identify the same key aspects of the alleged fraudulent scheme: (1) ESI automatically provided patients with 90-day supplies of medication after 60 days; and (2) as a result, patients received nine months of extra medication within a year and accumulated unneeded medicine.

These mirror image allegations more than meet the requirements of similarity necessary for invocation of the public disclosure bar.  The bar requires only that disclosures are "similar in kind, even if slightly less so in degree," because the key inquiry is whether the government was put on notice of alleged fraud.  *Millennium Pharms.*, 885 F.3d at 627. The *Army Times* article did far more: it revealed "the exact type of fraudulent conduct" 3729 LLC alleges.  *United States v. N. Am. Health Care, Inc.*, 173 F. Supp. 3d 943, 949 (N.D. Cal. 2016) (finding bar applicable based on news articles).  These substantial similarities trigger the bar.  *See United States ex rel. Jahr v. Tetra Tech EC, Inc.*, No. 13-cv-03835-JD, 2022 WL 2317268, at *9-10 (N.D. Cal. June 28, 2022) (bar applicable where news articles and complaint contained allegations that defendants did not screen or test for radiation); *Amphastar Pharms.*, 856 F.3d at 704 (bar applicable where disclosure and complaint "made nearly identical allegations" that defendant obtained patent based on misrepresentations and profited as a result).

7

### B.   DoD Publicly Disclosed in the Federal Register Substantially the Same Allegations That Are in 3729 LLC's Complaint

The public disclosure bar applies for the independent reason that substantially the same allegations contained in 3729 LLC's Complaint were also previously disclosed in the Federal Register during the DoD's notice-and-comment rulemaking procedure in November 2016.

In August 2015, DoD published an interim final rule implementing a federal statute that required TRICARE beneficiaries to refill certain prescriptions at military facilities or through the TMOP program.[7]  DoD explained that TRICARE paid 32% less for mail order medications than through retail and that there was potential for even greater savings by shifting refills to TMOP.  80 Fed. Reg. at 46,797.  Further, DoD explained that this would afford beneficiaries "significant savings" by providing "90 day refill[s] at no charge for generics in the mail order program compared to $8 copay for up to a 30 day in retail," with "even greater" savings for 90-day refills of brand-name prescriptions.  *Id.*  DoD invited public comments.  *Id.* at 46,796.

In November 2016, DoD issued the final rule,[8] and, in doing so, addressed comments received from the public.  Relevant here is that a "professional association" commented about alleged "unnecessary waste resulting from auto-ship policies" and suggested

---

[7] Civilian Health & Medical Program of the Uniformed Services (CHAMPUS)/TRICARE: Refills of Maintenance Medications Through Military Treatment Facility Pharmacies or National Mail Order Pharmacy Program, 80 Fed. Reg. 46,796 (proposed Aug. 6, 2015) (to be codified at 32 C.F.R. pt. 199).  (CHAMPUS is the prior name of TRICARE.)

[8] Civilian Health & Medical Program of the Uniformed Services (CHAMPUS)/TRICARE: Refills of Maintenance Medications Through Military Treatment Facility Pharmacies or National Mail Order Pharmacy Program, 81 Fed. Reg. 76,307 (Nov. 2, 2016) (to be codified at 32 C.F.R. § 199.21(r)).

8

implementing "policies to ensure mail order refills are approved and needed." 81 Fed. Reg. at 76,309. The "association" also argued that "beneficiaries should have to consent to getting a refill rather than automatic shipping." *Id.*

These published comments are a "Federal report" that triggers the public disclosure bar. The statutory provision—which refers to disclosures "in a congressional, [GAO], or other Federal report, hearing, audit, or investigation"—encompasses "fact-finding or investigatory process[es] to *obtain* information." *See Allergan*, 46 F.4th at 996-1000. Inclusion of the word "other" in the statute creates "a broader category that includes additional, information-obtaining methods distinct from those already mentioned." *Id.* at 998. Federal rulemaking such as DoD's falls within the definition of an "other Federal report" because it involves a formal "written presentation of facts" inviting public comment "to obtain information" that culminates in "a recommendation for action" in the form of new and/or revised regulations. *Id.* at 998 & n.7.

The comments contain allegations and transactions which are "substantially the same" as those contained in 3729 LLC's Complaint.[9] Both the comments and the Complaint contain allegations of excessive refills causing unnecessary waste, including through automatic refills being shipped without express authorization. *See id.*; Compl. ¶¶ 36-45. The rule further publicizes that beneficiaries receive 90-day supplies of medications, another allegation core to the Complaint. *See* 81 Fed. Reg. at 76,308; Compl.

---

[9] "The Ninth Circuit has recognized that the prior disclosure need not specifically name the FCA defendant so long as the class of potential wrongdoers is sufficiently narrow that it can be tied to a relatively specific allegation of wrongdoing." *United States ex rel. Lee v. Corinthian Colls.*, No. CV 07-1984 PSG (MANx), 2013 WL 12114015, at *6 (C.D. Cal. Mar. 15, 2013). Here, the "class of potential wrongdoers" is a class of one, because it is undisputed that ESI was the exclusive contractor for TMOP.

¶¶ 36-45.  These comments were not only made public, but were read and considered by DoD, the agency with ultimate oversight for TMOP.  *See Millennium Pharms.*, 885 F.3d at 627; *N. Am. Health Care*, 173 F. Supp. 3d at 949 (finding bar applicable where disclosures revealed "the exact type of fraudulent conduct" alleged in complaint).[10]

### C.   3729 LLC Does Not Qualify as an Original Source

3729 LLC cannot escape application of the public disclosure bar by claiming that it is an original source.  3729 LLC is not an original source for three separate and independent reasons.  First, 3729 LLC is a fictional entity created to pursue this litigation and, therefore, lacks any knowledge of the alleged fraud, independent or otherwise.  Second, 3729 LLC's allegations do not materially add to what the government already knew about the alleged fraud.  Third, 3729 LLC did not allege it made the mandatory disclosure to the government necessary to qualify as an original source.

### 1.   3729 LLC is Not an Original Source

An "original source" is "an individual who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or [(ii)] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions,

---

[10] Further, the Complaint on its face makes plain its heavy reliance on other qualifying public sources under Section 3730(e)(4)(A).  Among the public disclosures expressly relied on in the Complaint are: reports from the U.S. Department of Health and Human Services (Compl. ¶ 15) and the DoD IG (*id.* ¶ 94); congressional hearings (*id.* ¶ 18); published letters from the Centers for Medicare and Medicaid (*id.* ¶ 19); and published online complaints (*id.* ¶¶ 50-52).  3729 LLC expressly acknowledges it relied "on public filings" to reach the conclusion that ESI "was able to book revenue" and therefore increase "its profit margins" for "each dispensing event."  *Id.* ¶ 78.

and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

3729 LLC, cheekily named after the FCA (31 U.S.C. § 3729), was incorporated on May 29, 2019, less than a month before this lawsuit was filed on June 26, 2019.  *See* Ex. E.[11]  Because 3729 LLC was named as the relator in this action—rather than any of its individual members—the original source inquiry focuses on whether 3729 LLC itself meets the statutory definition.  That is a natural result of a bedrock principle that "LLCs are distinct legal entities, separate from their stockholders or members." *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958, 962 (9th Cir. 2002); *see also United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 554 (10th Cir. 1992) (assessing whether corporate relator qualified as original source rather than its shareholders).

Here, 3729 LLC does not allege, nor could it, that it has knowledge of any relevant facts.  3729 LLC also cannot stand in the shoes of its members.  *See United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharm. N.V.*, 945 F.3d 1237, 1244-45 (9th Cir. 2020) (refusing to treat LLC and natural person interchangeably in FCA's first-to-file context).  A similar situation was faced by the court in *United States ex rel. CKD Project, LLC v. Fresenius Medical Care Holdings, Inc.*, 551 F. Supp. 3d 27 (E.D.N.Y. 2021) (applying post-2010 public disclosure bar and adopting report and recommendation in full).  There, an LLC relator formed for the purpose of bringing a qui tam argued it was an original source because its knowledge of the alleged fraud came from an "inside participant in one of the fraudulent joint venture transactions." *Id.* at 33.  The court rejected this argument, holding that the relator was "not a whistleblower, but an entity formed solely for this

---

[11] *See United States ex rel. Doe v. Janssen Pharm. N.V.*, No. CV 16-06997-RGK-RAO, 2018 WL 5276291, at *3 & n.3 (C.D. Cal. Apr. 19, 2018) (taking judicial notice of LLC's registration documents filed with the Delaware Secretary of State in FCA action).

11

litigation" that "acquired its information from a third party," thus it lacked independent knowledge. *Id.* at 33; *see also id.* at 45.  Other courts have similarly ruled that corporate relators created for litigation lack the requisite knowledge of an original source.  *Koch Indus., Inc.*, 971 F.2d at 554 (finding corporate relator was not an original source of information its shareholder and president collected prior to incorporation); *see also Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451-52 (5th Cir. 1995) ("There is no suggestion that this litigation is based upon information collected by [corporate relator]."); *United States ex rel. Fed. Recovery Servs., Inc. v. Crescent City E.M.S., Inc.*, No. 91-4150, 1993 WL 345655, at *4 n.12 (E.D. La. Aug. 30, 1993) (rejecting argument that corporate relator created for purpose of litigation was "agent" of and had a right to information collected by shareholder "because to permit it would allow persons other than the original source to benefit merely by showing that they were somehow deputized by the original source to file the suit"), *aff'd*, 72 F.3d 447.

Filing this action on behalf of 3729 LLC rather than any individual was a "tactical choice."  *Alexander Volkhoff, LLC*, 945 F.3d at 1245.  The Court should not ignore that choice, which has consequences.  3729 LLC is not an original source.

### 2. 3729 LLC's Allegations Do Not Materially Add to the Public Disclosure

Even if 3729 LLC had independent knowledge, which it does not, it still would not qualify as an original source.  This is because its allegations do not materially add to the public disclosure.  To "materially add" to a disclosure, a relator's allegations must add value to supplement what the government already knows.  *United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x 328, 331-32 (9th Cir. 2016).  It is not enough to provide additional details or background concerning the already-disclosed conduct.  *Id.*; *see also United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 213 (1st Cir. 2016) ("[A] relator who merely adds detail or color to previously disclosed elements of an alleged scheme is not materially adding to the public disclosures.").

12

Here, 3729 LLC's allegations do not materially add to the public disclosures because the Complaint, at best, contains details and additional color regarding prior public disclosures that had already put the government on notice of the purported fraud. 3729 LLC alleges that the essence of the purported fraud was that ESI over-refilled 90-day prescriptions every 60 days from "October 2009 until early 2018," when it changed its dispensing formula, causing beneficiaries to receive and accumulate unneeded prescription refills. Compl. ¶¶ 2, 110-12. As a result, beneficiaries stockpiled nine months of extra medication within a year and ESI profited. *See, e.g.*, *id.* ¶¶ 34, 44. However, that is what was reported in the *Army Times* article and the DoD's rulemaking process. Nothing 3729 LLC (or its principals) brought to the table is different than what was already publicly disclosed.

3729 LLC provides the names of certain individuals who oversaw the automatic refill program and were allegedly involved in implementing and modifying the software ESI used (*id.* ¶¶ 55, 79-80, 113), and claims the former Pharmacist in Charge discussed his concerns regarding over-refilling prescriptions with certain ESI employees (*id.* ¶¶ 88-89). These allegations, however, are "background information" that does nothing to inform the government in any material way. *Winkelman*, 827 F.3d at 212 ("Offering specific examples of that conduct does not provide any significant new information where the underlying conduct already has been publicly disclosed."). In *Hastings*, the Ninth Circuit found that a relator was not an original source where it provided "background information and examples of loans that had been made using seller-funded down payment assistance programs" because the government was already aware of these programs, as they were the subject of proposed rules, audits, a GAO report, and congressional hearings. *Hastings*, 656 F. App'x at 332. The situation here is identical. Similarly, in *North American Health Care*, the relator alleged that defendants engaged in fraudulent billing practices by "upcoding" for services not rendered and by providing unnecessary therapies. *See N. Am. Health Care*, 173 F. Supp. 3d at 947-48. There, a news article already alleged that defendant was

13

engaged in these practices. *See id.* at 948. The Court ruled that informing the government that alleged fraud that had already been publicly disclosed was still ongoing did not add value to what it already knew. *See id.* at 951. Likewise, in *CKD Project*, the court ruled that a relator was not an original source where its complaint "paint[ed] a clearer picture of the alleged fraud but d[id] not considerably add to the information already available to the public." *CKD Project*, 551 F. Supp. 3d at 47.

As in *Hastings*, *North American Health Care*, and *CKD Project*, 3729 LLC's Complaint falls well short of materially adding to the public disclosures. The core aspects of the Complaint were disclosed through the *Army Times* article and the DoD's rulemaking. The Complaint's background information regarding the mechanics of the auto-refill program, individuals involved in its administration, and financial incentives, does not materially add to public disclosures which already reported the essential aspects of the alleged scheme. Under the FCA, that is not enough to qualify as an original source. *See Hastings*, 656 F. App'x at 331-32; *N. Am. Health Care*, 173 F. Supp. 3d at 951; *CKD Project*, 551 F. Supp. 3d at 47.

### 3.   3729 LLC Fails to Allege it Made the Statutorily Mandated Voluntary Disclosure to the Government

3729 LLC cannot invoke the original source exception for the additional reason that it fails to allege it made a voluntary disclosure to the government. The False Claims Act contains a simple, yet mandatory requirement: a relator must disclose information underlying its case to the government, either prior to the public disclosure (under the first prong of the current statute) or prior to filing its complaint (under the pre-2010 version of the FCA and the second prong of the current statute). 31 U.S.C. § 3730(e)(4)(B). 3729 LLC does not allege that it made a voluntary disclosure to the government *at any time*. That is fatal. *See United States ex rel. Sanches v. City of Crescent City*, No. C 08-05663 MEJ, 2010 WL 4696835, at *7 (N.D. Cal. Nov. 10, 2010) (finding relator was not an original source under first definition because public disclosure occurred prior to relator's

disclosure to the government); *Valeant Pharms. Int'l*, 445 F. Supp. 3d at 408 (finding relator was not an original source under second definition because he did not allege facts showing he "communicated with any pertinent agency before filing this lawsuit").

Because 3729 LLC is not an original source, the Complaint should be dismissed under the public disclosure bar.[12]

## II.   **The Complaint Fails to State a Claim**

To state a claim under the FCA, a relator must allege: "(1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020).  In considering whether a relator has met that burden, courts accept as true all "well-pleaded factual allegations" in the Complaint but are not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  Because FCA claims allege fraud, they are subject to Rule 9(b)'s heightened pleading requirement.  *Safran Grp.*, 2017 WL 235197, at *6.

### A.   **Failure to Allege Fraud or Falsity**

Relator 3729 LLC is proceeding under a theory of legal falsity.  That is, it is alleging that ESI's dispensing practices resulted in "excessive" or "flagrant and persistent overutilization" in violation of federal regulations and contractual requirements, rendering any claims it submitted legally false under the FCA.  *See* Compl. ¶¶ 35, 46-47.  But, the

---

[12] 3729 LLC does not specify when ESI allegedly submitted claims to the government, but the public disclosure bar would also apply to any claims based on ESI's conduct governed by the pre-2010 version of the FCA.  *See, e.g.*, *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000).

15

regulations that the Relator cites and the government's pre-2021 contracts with ESI are silent as to how frequently and in what quantities medication should be dispensed and refilled.  Neither they, nor Relator, provides any objective benchmarks that would have guided ESI's conduct at the time.  Accordingly, 3729 LLC's allegations are insufficient to plead legal falsity under the FCA.

To adequately plead a legally false claim, a relator must identify a specific contract provision or regulation with a clear benchmark or objective threshold that a defendant allegedly violated.  *See United States ex rel. DeFatta v. United Parcel Serv., Inc.*, 771 F. App'x 735, 738 (9th Cir. 2019) (affirming dismissal of complaint where relator could not prove defendant violated contractual provisions regarding proper shipping methods); *United States ex rel. Bly-Magee v. Premo*, 333 F. App'x 169, 170-71 (9th Cir. 2009) (affirming dismissal of FCA complaint premised on violation of Anti-Kickback Act because conduct at issue did not constitute kickback); *United States ex rel. O'Neill v. Somnia, Inc.*, 339 F. Supp. 3d 947, 955-57 (E.D. Cal. 2018) (granting motion to dismiss because relator failed to show that regulation prohibited defendant's conduct).  Yet the regulations Relator cites and the government's pre-2021 contracts with ESI are silent as to how frequently and in what quantities medication should be dispensed and refilled.  Relator therefore has provided no "clear benchmark or objective threshold" that ESI's dispensing practice allegedly violated.

3729 LLC contends that ESI failed to prevent fraud, waste, and abuse in the TRICARE program, and engaged in "flagrant and persistent overutilization of services," through its "excessive dispensing practices" in violation of 32 C.F.R. § 199.21 and 32 C.F.R. § 199.9(c), respectively.  *See* Compl. ¶¶ 25, 35, 46-47.  It also alleges ESI failed to give "proper regard" for patients' needs and physicians' orders, per 32 C.F.R. § 199.9(c)(5), and that it violated various state pharmacy regulations, with which ESI was required to comply while providing TMOP.  *See, e.g.*, *id.* ¶¶ 31-33, 58, 61-62, 69-70, 74-75.

The regulations and provisions that the Relator cites, however, provide neither objective standards defining what constitutes "overutilization" nor objective guideposts to establish that ESI's well-publicized filling practices constituted overutilization.  Absent such objective standards or guideposts, 3729 LLC cannot allege falsity under the FCA.  *See United States ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 94 (3d Cir. 2016) (affirming dismissal of qui tam complaint based on allegations schools used federal financial aid for exorbitantly priced books and fees because relator failed to specify a statute, regulation, or contractual provision establishing permissible price range); *cf. Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195-96 (2016) (an allegation that the defendant certified compliance with all laws would be insufficient to state FCA claim).  Instead, its claims in this regard are limited to alleging that ESI violated some generalized standard of conduct or contract performance, which courts recognize as insufficient to allege falsity in FCA cases.  *See, e.g.*, *United States v. McKesson Corp.*, 2020 WL 4805034, at *4-5 (N.D. Cal. Aug. 18, 2020) (granting motion to dismiss where relator alleged violations of regulations that did "not require any specific security measures and instead" allowed for discretion); *see also Somnia*, 339 F. Supp. 3d at 955 ("[I]f none of the alleged conduct is contrary to what the regulations permit, there can be no violation.").

Moreover, 3729 LLC has not pointed to any contractual provision that ESI allegedly violated through its dispensing practices.  Nor can it.  The relevant TMOP contracts did not impose specific dispensing guidelines.  Rather than impose specific dispensing limits and requirements, ESI's contracts with DHA authorized ESI to administer the TMOP based on its best commercial practices.  Ex. A at 2, § C.2.3; Ex. B at 9, § C.7.1.10.

When the government, in 2021, ultimately included a contractual provision defining the appropriate amount of prescription on hand for the first time in the most recent contract with ESI, it adopted the medication dispensing practices ESI already had in place by authorizing it to dispense 450 days' worth of medication (five 90-day refills) over 365 days.

17

Ex. C at 20, § C.6.1.23.4.  Far from proscribing ESI's conduct, this provision expressly permits the dispensing practices 3729 LLC claims were fraudulent.  And 3729 LLC cannot make out an FCA violation based on conduct that ESI's contracts never proscribed and now expressly permit.  *See Parker v. Sea-Mar Cmnty. Health Ctr.*, 853 F. App'x 197, 198 (9th Cir. 2021) (affirming dismissal of qui tam complaint because defendant's statements could not be false if not prohibited by statute, regulations, or guidance); *Whatley*, 657 F. App'x at 94; *McKesson Corp.*, 2020 WL 4805034, at *4 (explaining that pleading a false claim requires first adequately pleading violation of federal regulation).

Furthermore, insofar as 3729 LLC claims that ESI acted improperly by automatically enrolling beneficiaries in the automatic refill program, thereby causing the submission of a false or fraudulent claim (*see* Compl. ¶¶ 42, 63-69), its allegations likewise fail.[13]  First, the Complaint and the 2013 DoD IG Report (the "Report") cited therein (*see* Compl. ¶ 94 & n.10) describe the auto enrollment program in the same way, yet the Report ***commends*** the program.[14]  *See* Ex. H, Dep't of Defense Inspector Gen., The TRICARE Mail Order Pharmacy Program Was Cost Efficient and Adequate Dispensing Controls Were in Place

---

[13] 3729 LLC does not articulate the "automatic enrollment" allegation as an independent basis for FCA liability.  ESI addresses it here, however, in the interest of completeness.  Similarly, 3729 LLC's allegations regarding the Oregon Board of Pharmacy Consent Order (*see* Compl. ¶¶ 48-49, Exs. 2-3) are not related to ESI's administration of TMOP and are thus irrelevant to ESI's liability under the FCA.

[14] This Court can consider the Report in ruling on the motion to dismiss.  It need not and should not credit 3729 LLC's allegations that are contradicted by the Report cited in the Complaint.  *See Jordan v. Bank of Am., N.A.*, 396 F. Supp. 3d 922, 928 (E.D. Cal. 2019) (courts need not accept as true allegations that contradict matters subject to judicial notice or incorporated by reference).

18

(2013) at 8 (The Auto Refill Program "allows beneficiaries to choose automatic shipment of their refills with the option to enroll any or all of their prescriptions. . . . Unless the beneficiary requested a cancellation, the contractor would process the refills based on when their previous fill would run out. . . . Like all refill options, it was the beneficiaries' responsibility to manage participation in the Auto Refill program.").  The government both knew of and approved of the conduct underlying 3729 LLC's allegations regarding automatic enrollment.  ESI therefore cannot have submitted a false claim.  *See United States v. Shasta Servs., Inc.*, 440 F. Supp. 2d 1108, 1113-14 (E.D. Cal. 2006) (finding defendant did not submit false claim and granting motion to dismiss because government had knowledge of circumstances surrounding conduct).

Second, 3729 LLC fails to connect this allegation to any claim for payment. Specifically, it fails to allege that "automatic" enrollment in the program caused any beneficiary to receive a refill that was not medically necessary.  Without this, there is no submission of a claim, which is required for FCA liability.  *Millennium Pharms.*, 885 F.3d at 629.

## B.    Failure to Allege Materiality

The Complaint should be dismissed for the independent reason that it fails to allege materiality.  The Supreme Court has held that the standard for materiality is rigorous and "False Claims Act plaintiffs must . . . plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."  *Escobar*, 579 U.S. at 195 n.6 (rejecting assertion that materiality is too fact intensive for courts to dismiss FCA cases on a motion to dismiss); *see also United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, No. EDCV 17-00002 JGB (KKx), 2018 WL 5266867, at *9 (C.D. Cal. Sept. 27, 2018) (granting motion to dismiss with prejudice where relator failed to plead materiality), *aff'd sub nom. Adomitis*, 816 F. App'x 64.

19

Liability under the FCA arises only for misrepresentations that are material to the government's decision to pay a claim. *See Escobar*, 579 U.S. at 181. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* at 194. So, if the government continues to pay for particular claims "despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id*. at 195; *United States v. TruConnect*, No. CV 16-3767 PSG (FFMx), 2020 WL 13534177, at *8 (C.D. Cal. Nov. 23, 2020) (granting motion to dismiss for lack of materiality where government continued making payments despite knowledge of alleged fraud).

3729 LLC makes conclusory claims that the government would not have paid ESI had it known of the alleged fraud, but those conclusory allegations must be disregarded. Thus, the Complaint fails to satisfy Rule 9(b)'s requirement to allege facts supporting that conclusion with particularity. *Escobar*, 579 U.S. at 195 n.6 (relator must satisfy Rules 8 and 9(b) when pleading materiality).

In any event, the Complaint and documents referenced therein make plain that the government continued to pay the claims even though it knew of ESI's dispensing practices via the public disclosures. DHA began paying ESI's automatic refill claims in 2008 and continues to do so today, despite having been made aware of allegations in the *Army Times* article in 2013. In fact, DHA actually ***communicated with ESI*** regarding the article at the time it was published. *See* Ex. F. In other words, the payor agency had ***actual*** notice of the publicly disclosed allegations. DHA then conducted an investigation into the alleged over-refilling in 2015 and the DoD's rulemaking publicly disclosed these allegations in 2016. Further, in a 2017 DoD Inspector General Report, the DoD expressly and publicly stated that it considered "beneficiaries who exceeded quantity limits solely due to the refill

20

date to be compliant with quantity limit controls."  Ex. G, Dep't of Defense Inspector Gen., Defense Health Agency Controls Over High-Risk Pharmaceutical Payments (2017) at 54 n.12.  Knowing all of this, the government has renewed its contract with ESI twice, in 2014 and 2021—after the Complaint here was filed, most recently expressly incorporating ESI's existing dispensing practices.  Ex. C at 20, § C.6.1.23.4.

Thus, the government's actual behavior evidences that 3729 LLC's allegations are immaterial.  *See United States ex rel. Zissa v. Santa Barbara Cnty. Alcohol, Drug & Mental Health Servs.*, 2019 WL 3291579, at *6 (C.D. Cal. Mar. 12, 2019) (granting motion to dismiss because government knew of alleged violations and continued making payments, which was "strong evidence against materiality") (citing *Escobar*, 579 U.S. at 195); *see also United States ex rel. Petratos v. Genentech*, 855 F.3d 481, 490 (3d Cir. 2017) (finding lack of materiality where plaintiff disclosed material, non-public information to government regarding drug, but in following six years, government continued to approve and expanded authorized uses of drug and DOJ declined to intervene or take other action).

## C.    Failure to Allege Scienter

3729 LLC's conclusory allegations that ESI acted knowingly are insufficient to allege scienter under the FCA.  To survive a motion to dismiss, relators must allege facts establishing that the defendant "knowingly" presented a false or fraudulent claim for payment.  31 U.S.C. § 3729(a)(1)(A).  More specifically, that the defendant had: (1) actual knowledge; (2) deliberate ignorance; or (3) reckless disregard of the truth or falsity of the information.  *See United States v. United Parcel Serv., Inc.*, No. CV 08-7284-GW(CTx), 2015 WL 13648581, at *3 (C.D. Cal. July 2, 2015), *aff'd sub nom. DeFatta*, 771 F. App'x 735; *see also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (explaining that knowing falsity "means 'a lie'").  Not only does 3729 LLC fail to provide any such allegations, the allegations it has mustered also make plain that it cannot adequately allege scienter.

### 1.   ESI Reasonably Interpreted Applicable Requirements

When a government contractor acts in accordance with a reasonable interpretation of obligations, it does not act knowingly or deliberately.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) ("Where . . . the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.").  Courts may properly grant motions to dismiss when a defendant acts pursuant to a reasonable interpretation of a statute or contractual provision. *See United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc*., 372 F. Supp. 3d 1078, 1089 (N.D. Cal. 2019) (granting motion to dismiss noting a "good-faith interpretation of a regulation does not meet the FCA's scienter requirement").

Here, ESI established its dispensing practices based on a reasonable interpretation of the TPharm contracts.  The 2008 contract, TPharm2, contained no specific requirements regarding refill scheduling and frequency, the maximum supply of medication ESI was able to dispense, or the auto-refill program.  Ex. A.  When renewed in 2014, TPharm4 again did not specify dispensing requirements.  Ex. B at 14, § C.9.5.  In the absence of specificity, ESI reasonably interpreted its contractual requirements.

The subsequent second contract renewal in 2021, TPharm5—which came well after the *Army Times* article, the investigation into certain beneficiaries who received extra medication, the DoD's rulemaking, and 3729 LLC filed this Complaint—confirms the reasonableness of ESI's interpretation.   Adopting language regarding dispensing procedures for the first time, TPharm5 authorized the practices ESI already had in place by permitting it to dispense five 90-day refills over the course of a year to ensure patients did not run out of supply on day 360 (i.e., the conclusion of the fourth 90-day fill).  Ex. C.  As such, ESI could not have acted with the requisite scienter under the FCA.  *United States ex rel. McGrath v. Microsemi Corp*., 690 F. App'x 551, 552 (9th Cir. 2017) (affirming

22

1  dismissal for lack of scienter where defendant had a reasonable, good-faith interpretation

2  of the law).

3  **2.    DHA Was Aware of ESI's Actions, Negating Scienter**

4  Government knowledge and approval "of the particulars of a claim for payment

5  before that claim is presented" negates scienter.  *United States ex rel. Costner v. United*

6  *States*, 317 F.3d 883, 887 (8th Cir. 2003); *see also United States v. Bollinger Shipyards,*

7  *Inc.*, No. 12-920, 2013 WL 393037, at *9 (E.D. La. Jan. 30, 2013) (dismissing claim noting

8  "[t]he government's knowledge of the alleged false claim is relevant to whether the

9  defendant 'knowingly' submitted a false claim").

10  Here, the government was aware of ESI's dispensing practices via public disclosures

11  and its contractually required access to data.  As discussed above, *supra* at 2-3, DHA was

12  aware of and approved of ESI's dispensing practices by renewing its contract twice while

13  having full knowledge of the dispensing practices and claims data.  Equipped with this

14  knowledge, DHA continued to pay ESI.  That negates scienter.  *See Gonzalez*, 759 F.3d at

15  1115 (affirming dismissal for lack of scienter where the government communicated with

16  defendant, was aware of defendant's conduct, did not pursue money owed by defendant,

17  and never suggested defendant made knowingly false claims).

18  **III.   The Holding Company Should Be Dismissed**

19  3729 LLC makes no substantive allegations about ESHC, noting in passing that it is

20  incorporated in Delaware, headquartered in Missouri, "the holding company for Express

21  Scripts, Inc., and was formed after the 2012 merger of ESI" and Medco Health Solutions.

22  Compl. ¶ 9.  But, those allegations are insufficient to state a claim.  3729 LLC must allege

23  that ESHC actually participated in some conduct; merely alleging it is a parent company is

24  not enough.  *Safran Grp.*, 2017 WL 235197, at *8 (dismissing parent corporation under

25  Rule 9(b) where complaint contained "only one paragraph that specifically address[ed]" it

26  and impermissibly asserted "collective allegations" against three defendants).  Here, 3729

27  will never be able to meet that pleading burden because ESHC is a holding company with

28  23

no employees or operations and it is incapable of engaging in any conduct, let alone misconduct.  Accordingly, this Court should dismiss it with prejudice.

## **CONCLUSION**

For the foregoing reasons, 3729 LLC's Complaint against ESI and ESHC should be dismissed with prejudice.[15]

---

[15] Because the Complaint is based on public disclosures and there are no additional facts that would render 3729 LLC an original source, and the facts show that any alleged violation was immaterial, amendment would be futile and dismissal should be with prejudice.  *See United States ex rel. Hong v. Newport Sensors, Inc.*, No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246, at *7 (C.D. Cal. May 19, 2016), *aff'd*, 728 F. App'x 660 (9th Cir. 2018).

24

1  | Dated: December 15, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By:   */s/ Joseph Duffy*

_____

Joseph Duffy, Bar No. 241854
joseph.duffy@morganlewis.com
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Tel:   +1.213.612.7378
Fax:   +1.213.612.2501

Attorney for Defendants
Express Scripts Holding Co. and Express
Scripts, Inc.

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 15, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Joseph Duffy*
Joseph Duffy

26