David J. Chizewer (*pro hac vice*, IL Bar No. 6206747)
Roger A. Lewis (*pro hac vice*, IL Bar No. 6229704))
Benjamin W. Chertok (*pro hac vice*, IL Bar No. 6335682)
GOLDBERG KOHN LTD.
55 East Monroe Street – Suite 3300
Chicago, Illinois 60603
(312) 201-4000
david.chizewer@goldbergkohn.com
roger.lewis@goldbergkohn.com
benjamin.chertok@goldbergkohn.com

Ross H. Hyslop (CSB #149358)
PESTOTNIK LLP
501 West Broadway – Suite 1025
San Diego, California 92101
(619) 237-3000
hyslop@pestotnik.com

*Counsel for Plaintiff-Relator*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**THE UNITED STATES OF AMERICA,** *ex rel.* **3729, LLC,**

Plaintiff-Relator,

vs.

**EXPRESS SCRIPTS HOLDING COMPANY and EXPRESS SCRIPTS, INC.**

Defendants.

**Case No. 3:19-cv-01199-TWR-WVG**

**PLAINTIFF-RELATOR 3729, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**Date:** **April 27, 2023**
**Time:** **1:30 p.m.**
**Location:** **Courtroom 3A, 3rd Floor Edward J. Schwartz United States Courthouse 221 W Broadway San Diego, CA 92101**

Hon. Todd W. Robinson

Complaint Filed: June 26, 2019

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 2

A. Relator's allegations and transactions were never publicly disclosed under either version of the FCA's public disclosure rule. ........................................ 2

B. Even if the public disclosure rule were otherwise applicable—which it is not—Relator qualifies as an original source under both versions of the FCA. ........................................ 5

1. Relator's allegations materially added to the purported disclosures, satisfying the current original source test. ........................................ 6

2. Relator had direct knowledge of ESI's fraud through its principals, satisfying the pre-2010 original source test. ........................................ 7

3. The timing of Relator's corporate formation has no impact on Relator's status as an original source under either version of the rule. ........................................ 8

CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abrahim & Sons Enters. v. Equilon Enters., LLC*,
292 F.3d 958 (9th Cir. 2002)....................9

*Am. Gen. Life Ins. Co. v. Darbinyan*,
No. 2:20-cv-09743-JVS-JC, 2022 WL 1134722 (C.D. Cal. Mar. 30, 2022)......9

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010)....................2

*Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
276 F.3d 1032 (8th Cir. 2002)....................5, 7, 8

*United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharm. N.V.*,
945 F.3d 1237 (9th Cir. 2020)....................9

*United States ex rel. Baltazar v. Warden*,
635 F.3d 866 (7th Cir. 2011)....................3, 4, 5

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*,
668 F. Supp. 2d 780 (E.D. La. 2009)....................7

*United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*,
551 F. Supp. 3d 27 (E.D.N.Y. 2021), *aff'd*, 2022 WL 17818587 (2d Cir. Dec. 20, 2022)....................8

*United States ex rel. Devlin v. California*,
84 F.3d 358 (9th Cir. 1996)....................7, 8

*United States ex rel. Doe v. Janssen Pharm. N.V.*,
No. CV 16-06997 RGK-RAO, 2018 WL 5276291 (C.D. Cal. Apr. 19, 2018)..9

*United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*,
656 F. App'x. 328 (9th Cir. 2016)....................7

*United States ex rel. Jahr v. Tetra Tech EC, Inc.*,
No. 13-cv-03835-JD, 2022 WL 2317268 (N.D. Cal. June 28, 2022)..................4

*United States ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016)....................3, 4

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
812 F.3d 294 (3d Cir. 2016)....................10

*United States ex rel. Precision Co. v. Koch Indus., Inc.*,
971 F.2d 548 (10th Cir. 1992)....................9

*United States ex rel. Zizic v. Q2Administrators, LLC*,
728 F.3d 228 (3rd Cir. 2013)....................3

*United States v. Reliance Med. Sys., LLC*, No. CV1406979, 2022 WL 524062 (C.D. Cal. Feb. 22, 2022)..........................2

**Statutes**

31 U.S.C. § 3730(e)(4)(A)..........................2, 3

31 U.S.C. § 3730(e)(4)(B)..........................5

**Other Authorities**

Restatement (Third) of Agency, "Imputation of Notice of Fact to Principal," § 5.03(e) (2006)..........................10

**Regulations**

81 Fed. Reg. at 76,309..........................5

# INTRODUCTION

All parties agree that, as the Court correctly stated in its Order of February 13, 2023 (ECF No. 68) at 2, the 1986 version of the public disclosure bar applies to false claims submitted before March 23, 2010, and the 2010 version to false claims submitted thereafter. *See* Defendants' Supplemental Memorandum (ECF No. 72), at 1-2. Because ESI's alleged conduct occurred "from at least October 2009 until early 2018," (Compl. ¶ 2)[1], the lion's share of the case will be governed by the modern, 2010 version of the public disclosure rule. Nevertheless, because there were false claims submitted before that version was enacted on March 23, 2010, the Court's suggestion that it will be necessary to examine both versions of the rule and apply them to the time periods to which they are relevant is correct.

There is also basic agreement among the parties as to the differences between the 1986 and 2010 versions of the public disclosure rule. In large part, Relator adopts Defendants' summary of the changes to the rule made by the 2010 amendments.

Where the parties diverge is in the application of the rule, including both its 1986 and 2010 versions, to this case. Defendants contend that Relator's claims "fail as a matter of law under both versions of the bar." ECF No. 72, at 1. But the opposite is true. Under both the 1986 and 2010 versions of the FCA, Defendants' public disclosure argument fails. Neither the *Army Times* article nor the Federal Register publication contained substantially the same allegations or transactions of fraud that Relator asserted in the Complaint, so they do not act as prior public disclosures under either version of the rule. Moreover, even if there was a public disclosure, Relator qualifies as an original source under both versions, and is thus exempt from the public disclosure bar. Relator's Complaint is not barred, in

[1] Unless otherwise indicated, defined terms in this Supplemental Memorandum have the same meaning as in Relator's Response in Opposition to Defendants' Motion to Dismiss (ECF No. 62) ("Relator's Resp.").

whole or in part, by the FCA's public disclosure rule.

## ARGUMENT

As the Court noted in its February 13, 2023 Order (ECF No. 68), "[t]he Court must apply the version of the FCA in effect at the time of the alleged fraudulent conduct[.]" ECF No. 68 at 2. In 2010, Congress amended the FCA through the Patient Protection and Affordable Care Act, including changes to the FCA's public disclosure rule. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n. 1 (2010). The 2010 amendments to the FCA became effective on March 23, 2010. *See United States v. Reliance Med. Sys., LLC*, No. CV1406979, 2022 WL 524062, at *4 (C.D. Cal. Feb. 22, 2022). The 2010 amendments do not apply retroactively to conduct that occurred before their effective date. *See Graham*, 559 U.S. at 283 n.1. Accordingly, this Court should apply the 1986 version of the public disclosure bar to ESI's conduct before March 23, 2010, and apply the 2010 version to its conduct on March 23, 2010 and afterward.

### A. Relator's allegations and transactions were never publicly disclosed under either version of the FCA's public disclosure rule.

A substantial portion of Defendants' supplemental brief is devoted to a point that is not contested by Relator, that the *Army Times* and the Federal Register count as "public sources" under both versions of the public disclosure rule. ECF No. 72, at 3-4. But that issue, while not in dispute, is insufficient to justify application of the bar, as both versions of the rule further require that the public source disclose substantially the same allegations or transactions in the relator's complaint. Under both the 1986 and 2010 versions of the FCA, the public disclosure bar is inapplicable here because it fails that test.

Pursuant to the 1986 version, courts do not have jurisdiction to hear claims if they are "based upon the public disclosure of *allegations or transactions*" already published in public sources. 31 U.S.C. § 3730(e)(4)(A)(1986) (emphasis

added). Under the modern 2010 version, courts can dismiss claims "if substantially the same *allegations or transactions* as alleged in the action or claim were publicly disclosed" in (a narrower list of) public sources. 31 U.S.C. § 3730(e)(4)(A)(2010) (emphasis added).

There is no disagreement between the parties that the "allegations or transactions" test is basically the same under both versions. *See* ECF No. 72 at 2 ("the test under each version is substantively identical"). The difference in view lies solely in whether the *Army Times* article and the Federal Register meet that test. They do not.

Indeed, while correctly summarizing the test under both versions of the FCA, ECF No. 72 at 2-3, Defendants actually "pay scant attention to the statutory language." *United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 867 (7th Cir. 2011). As discussed in Relator's original Response (ECF No. 62) at 8-9, "[c]ourts have interpreted 'allegation' to refer to a direct claim of fraud, and 'transaction' to refer to facts from which fraud can be inferred," a formula applicable to both versions of the public disclosure rule. *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569-71 (9th Cir. 2016) (citing *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 235–36 (3rd Cir. 2013) (Under both versions of the rule, "[a]n allegation of fraud is an explicit accusation of wrongdoing. A transaction warranting an inference of fraud is one that is composed of a misrepresented state of facts plus the actual state of facts.")). *See* Relator's Resp. (ECF No. 62) at 8-11.

Neither the *Army Times* nor the Federal Register published any "explicit accusation of wrongdoing" or "a direct claim of fraud," and thus neither source disclosed the same "allegations" in the Complaint. Moreover, neither of these sources published "facts from which fraud can be inferred," so neither source disclosed the same "transactions" as those detailed in the Complaint.

Unlike the *Army Times* and the Federal Register, the Complaint alleges

that ESI did not just over-supply one military veteran, but schemed to over-supply *all* members signed up for mail-order delivery globally, and did so *intentionally* through orchestration by its top executives and execution at every level of its business. Compl. *passim*. *See Baltazar*, 635 F.3d at 869 (concluding that pre-2010 FCA claims were not "based on" prior disclosures, and post-2010 claims were not "substantially similar" to them, where relator's complaint "supplied vital facts that were not in the public domain: that [defendant] not only was submitting false claims but also was submitting them knowing them to be false, and thus was committing fraud.").

The Complaint goes even further. It includes allegations that ESI, on the commercial side of its business when it acted as a PBM, prohibited the same wasteful profiteering that it engaged in systematically under its Tricare contracts with DoD. Compl. ¶¶ 116-18. It details how ESI actively violated the prescribing orders from physicians, and knowingly broke industry standards to increase its bottom line. *See id. passim*. It includes allegations that ESI engaged in a cover-up, strategically hiding its oversupply algorithm and practice from the government for years. *See id*. ¶¶ 84, 94, 100, 103. None of these allegations are found in the *Army Times* or the Federal Register.

The allegations in the Complaint are thus "different in kind and in degree from the previously disclosed information." *United States ex rel. Jahr v. Tetra Tech EC, Inc.*, No. 13-cv-03835-JD, 2022 WL 2317268, at *9 (N.D. Cal. June 28, 2022) (applying the 2010 version of the public disclosure rule). *See also Mateski*, 816 F.3d at 567-69 n. 7 (applying the 1986 version of the rule, but noting that its analysis would be the same under the 2010 version.). The *Army Times* article simply reported that ESI's mail-order program "may be wasting money," briefly describing a few poor customer experiences, including a single instance of a Tricare recipient who had been over-supplied with medication. *See* ECF No. 55-6. Likewise, a professional organization's vague comments in the

Federal Register regarding "unnecessary waste resulting from auto-ship policies" (81 Fed. Reg. at 76,309), is not the same as, or "substantially similar" to, the vast scheme that Relator has alleged. *See Baltazar*, 635 F.3d at 867 (finding that a publication did not disclose the same allegations or transactions as an FCA complaint where it only disclosed "errors [that] may have been caused by negligence rather than fraud[.]").

The Complaint differs from Defendants' sources, both in kind and in degree. The public disclosure bar does not apply to this case under either version of the rule.

**B. Even if the public disclosure rule were otherwise applicable—which it is not—Relator qualifies as an original source under both versions of the FCA.**

Before the 2010 amendments to the FCA, an original source was required to have "direct and independent knowledge of the information on which the allegations are based[.]" 31 U.S.C. § 3730(e)(4)(B)(1986). Here, Relator has met that requirement as to false claims that it alleges ESI submitted before March 2010. As discussed below and in Relator's Resp. (ECF No. 62 at 13-15), Relator's knowledge comes from its own principals, which is sufficiently "direct" under the 1986 rule. *See Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1049 (8th Cir. 2002) (under the 1986 version of the rule, corporate relators can have direct knowledge and qualify as original sources; the mere fact that a corporate entity acts through its agents does not change that).

The 2010 amendments changed the original source rule to remove the requirement that original sources have "direct" knowledge of the misconduct. Instead, after the 2010 amendments, an original source must simply have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions[.]" 31 U.S.C. § 3730(e)(4)(B)(2010). Defendants have not challenged that Relator's knowledge is "*independent of* . . . the publicly disclosed allegations or transactions." As detailed in the Complaint, Relator's

principals learned of ESI's scheme not through the *Army Times* or Federal Register, but through their own personal experiences, including those of the PIC Relator, who worked as an employee of ESI and saw the fraud first-hand. Compl. ¶¶ 7, 54. Nor can there be serious dispute that Relator's Complaint materially adds to the passing, vague assertions in Defendants' sources. Thus, under the current version of the rule, Relator is an original source of his allegations relating to false claims submitted by ESI after March 2010.

**1. Relator's allegations materially added to the purported disclosures, satisfying the current original source test.**

Turning first to the current 2010 version of the original source exception that largely governs here, Relator easily meets the "materially adds" requirement. The vast bulk of the allegations in Relator's Complaint are material additions to what the *Army Times* and the Federal Register disclosed, vaguely and briefly, years before Relator initiated this case.

Defendants assert that the *Army Times* article and the Federal Register disclosed that "ESI shipped 90 days' worth of medication every 60 days, and dispensed [medication] in a manner that was excessive." (ECF No. 72, at 6). But that gives these sources far too much credit; nothing in them disclosed that ESI directed a years-long, systematic scheme to over-supply all TriCare customers across ESI's mail-order program. But even if the Court were to accept Defendants' characterization, it must still consider the material allegations in the Complaint that go well beyond that, including that ESI (i) acted with intent to defraud the government, deliberately creating and implementing an algorithm to effectuate its scheme; (ii) violated physicians' prescribing orders and disregarded the needs of patients in automatically enrolling them in the program, and contravened ESI's own protocols with regard to non-government payors; and (iii) actively concealed its conduct from the government. *See* ECF No. 62 at 4-6 (summarizing Complaint).

Relator's allegations thus "add[ed] value to what the government already knew," qualifying it as an original source under the modern version of the rule. *United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x. 328, 331-32 (9th Cir. 2016) (applying 2010 version of the public disclosure rule). *See* Relator's Resp. (ECF No. 62) at 15-16.

### 2. Relator had direct knowledge of ESI's fraud through its principals, satisfying the pre-2010 original source test.

With regard to the pre-2010 false claims at issue in this case, the 1986 version of the original source rule governs. That version of the rule turns not on whether the relator "materially added" information like the modern rule, but on whether the relator had "direct" knowledge of the fraud. As Defendants acknowledge, under the modern rule, a relator is no longer required to have direct knowledge to qualify as an original source. ECF No. 72 at 5.

But Relator here *did* have direct knowledge, satisfying the 1986 test, too. On this point, Defendants again assert, incorrectly, that where the relator is a business entity alleging facts within the knowledge of its principals, it cannot be an original source. ECF No. 72 at 6-7. Not so. Indeed, "[n]o courts have held that corporations responsible for the discovery of information cannot have 'direct knowledge' because they have to act through agents." *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 801 (E.D. La. 2009) (citation omitted). As the Eighth Circuit has clarified, "[i]n fact, corporate plaintiffs have been held to have direct knowledge making them an original source." *Minn. Ass'n of Nurse Anesthetists*, 276 F.3d at 1049.

Defendants cite *United States ex rel. Devlin v. California*, 84 F.3d 358 (9th Cir. 1996), for the proposition that a relator's knowledge is not "direct" under the 1986 rule when the relator received it "secondhand" from a third-party source. ECF No. 72 at 6-7. But the Relator's knowledge from its own principals was not "secondhand" information at all, unlike in *Devlin*, where an employee of the

defendant, not the relators or those in privity with them, was the sole source of the relators' knowledge. *Devlin*, 84 F.3d at 360 (relators "were informed of the alleged fraud by William Cotey, an SSD employee who had participated in the fraud"). Relator's knowledge here comes straight from its principals, and nothing about that renders its knowledge indirect. *See Minn. Ass'n of Nurse Anesthetists*, 276 F.3d at 1049 ("Though organizations must, of course, act through agents, this does not render their knowledge parasitical or their agency 'intervening' in the sense of interrupting the causal connection between the corporation's efforts and the knowledge."). *See* Relator's Resp. (ECF No. 62) at 13-15.

**3. The timing of Relator's corporate formation has no impact on Relator's status as an original source under either version of the rule.**

The mere fact that Relator was formed just prior to, and for the purpose of, initiating this lawsuit does not disqualify Relator from being an original source, as Defendants contend. Defendants still can point to no statutory text, case, or other authority, under either version of the original source rule, to support their novel argument that specially-formed relator LLCs are disqualified by law from being original sources.

Defendants' continued reliance on *United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 33, 44-46 (E.D.N.Y. 2021), *aff'd*, 2022 WL 17818587 (2d Cir. Dec. 20, 2022), is misplaced. ECF No. 72 at 7. While the court there declined to apply the original source exception to an LLC formed for the purpose of bringing a FCA case, the court did not base its reasoning on that point. Rather, in *CKD Project*, the court ruled that the relator was not an original source because it "acquired its information [solely] from a third party," thus running afoul of the 1986 rule's requirement that the relator show "direct" knowledge of the fraud; and offered "no detail" to support its "conclusory statement, couched in legalese," that it materially added to the public disclosures, thus failing to meet the 2010 rule's requirement. *Id*. at 33, 44-46.

*United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 554 (10th Cir. 1992), is also inapposite. ECF No. 72 at 8. The court in that case, again applying the 1986 version of the original source rule, considered the information that the relator had acquired after its formation—consisting of investigative materials like third-party statements and interview summaries—and characterized it as insufficiently direct and independent. *See Precision Co.*, 971 F.2d at 554. The court did *not* reason that the relator failed to qualify as an original source *because* the relator had been formed shortly before it filed its FCA complaint. *See id*. Defendants' other citations on this topic do not even refer to discussions about the original source rule; some did not involve application of the FCA at all. *See United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharm. N.V.*, 945 F.3d 1237, 1244 (9th Cir. 2020) (no discussion of original source); *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958, 962 (9th Cir. 2002) (not an FCA case); *Am. Gen. Life Ins. Co. v. Darbinyan*, No. 2:20-cv-09743-JVS-JC, 2022 WL 1134722, at *8 (C.D. Cal. Mar. 30, 2022) (not an FCA case); *United States ex rel. Doe v. Janssen Pharm. N.V.*, No. CV 16-06997 RGK-RAO, 2018 WL 5276291, at *3 (C.D. Cal. Apr. 19, 2018) (no discussion of original source).

Indeed, Defendants' novel theory that specially-formed relator LLCs are disqualified from being original sources is defeated by the plain text of the rule. This is particularly true under the modern, post-2010 version that covers the bulk of false claims in this case. All a relator must do under the modern rule is bring the government information that "materially adds" to the previously disclosed information. There is no "corporate existence" or temporal caveat to the "materially adds" requirement. If a corporate relator brings a FCA case that materially adds to the information previously disclosed, it can be an original source whether the corporation was formed 10 minutes or 10 years before filing the complaint; whether the information was learned directly or indirectly, first-

hand or second-hand (or third- or fourth- hand), before or after the corporate relator was formed. *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 (3d Cir. 2016) ("The salient question [after the 2010 amendments to the original source rule] is no longer whether the relator has 'direct and independent knowledge' of the information on which the allegations in the complaint are based. … [T]he textual changes alone evince Congress's intent to lower the bar for relators[.]").

Even under the 1986 version of the original source rule, the mere fact that Relator, through its principals, authorized the filing of this lawsuit based on information learned by those same principals before they formed Relator as an LLC, does not somehow change Relator's knowledge from "direct" to "indirect." While Defendants offer no authority for their novel theory, reference to the law of agency quickly negates it. *See* Restatement (Third) of Agency, "Imputation of Notice of Fact to Principal," § 5.03(e) (2006) ("When an agent is aware of a fact at the time of taking authorized action on behalf of a principal and the fact is material to the agent's duties to the principal, notice of the fact is imputed to the principal although the agent learned the fact prior to the agent's relationship with the principal, whether through formal education, prior work, or otherwise.")

ESI cannot escape liability for its brazen fraud on the United States based solely on the date that Relator happened to file its articles of organization, or the timing or means of Relator's acquisition from its principals of the knowledge that led it to file suit. Under both versions of the original source rule, Relator qualifies as an original source.

## CONCLUSION

For these reasons and those in Relator's Resp. (ECF No. 62), Relator's claims against ESI are not barred by either the 1986 or 2010 versions of the FCA's public disclosure rule.

Dated: March 13, 2023

Respectfully submitted,

By: /s/ Roger A. Lewis
Roger A. Lewis

David J. Chizewer (PHV)
Roger A. Lewis (PHV)
Benjamin W. Chertok (PHV)
GOLDBERG KOHN LTD.
55 East Monroe Street – Suite 3300
Chicago, Illinois 60603
(312) 201-4000
david.chizewer@goldbergkohn.com
roger.lewis@goldbergkohn.com
benjamin.chertok@goldbergkohn.com

Ross H. Hyslop (CSB #149358)
PESTOTNIK LLP
501 West Broadway – Suite 1025
San Diego, California 92101
(619) 237-3000
hyslop@pestotnik.com

*Counsel for Plaintiff-Relator 3729, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 13, 2023, to all counsel of record who have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ Roger A. Lewis

Roger A. Lewis